UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Crim. No. 19-236 (ADM/BRT) |
| Plaintiff, | |
| v. | |
| Shannon Michael White, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

---

Thomas Calhoun-Lopez, Esq., United States Attorney's Office, counsel for Plaintiff.

Douglas L. Micko, Esq., Federal Defender's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

## INTRODUCTION

Defendant Shannon Michael White has been charged with Felon in Possession of a Firearm and Felon in Possession of Ammunition. (*See* Doc. No. 11, Indictment.) Defendant moved to suppress any physical evidence obtained as a result of the July 17, 2019 search and seizure of two bags associated with Defendant, claiming that the search and seizure was conducted without warrant, without probable cause, and lacking in any exigent circumstances. (Doc. No. 21, Def.'s Mot. to Suppress.) The Government opposes the motion.

The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The undersigned held a hearing on Defendant's motion on November 1, 2019, admitted seven exhibits into evidence, and

heard testimony from Officer Troy Lennander, a member of the Department of Corrections' Fugitive Apprehension Unit. (*See* Doc. No. 35, 11/01/19 Hr'g Amended Minute Entry; Doc. No. 32, 11/01/19 Hr'g Ex. List.) Officer Lennander testified concerning the circumstances surrounding the seizure of Defendant's cell phone that is the subject of the motion to suppress. (*See generally* Doc. No. 41, 11/01/19 Hr'g Tr. ("Tr.")) The parties submitted post-hearing briefing as ordered by the Court. (Doc. Nos. 43, 44.) For the reasons set forth below, this Court recommends that Defendant's motion be denied.

## BACKGROUND[1]

On April 12, 2019, the Department of Corrections ("DOC") issued an arrest warrant for Defendant after he violated the terms of his supervised release. (Tr. 10.) That warrant was communicated to the DOC's Fugitive Apprehension Unit ("FAU") which then began an investigation into Defendant's whereabouts. (*Id.* at 8, 11–12.) On July 17, 2019, the FAU learned that Defendant would be on Cypress Avenue, south of Reaney Avenue, in St. Paul, verified the relevant warrant was active, and set out to arrest Defendant. (*Id.* at 13–15.)

---

[1] The following summary is based on Officer Lennander's testimony provided at the November 1, 2019 hearing, along with the admitted exhibits. Officer Lennander has worked for the Department of Corrections for three and a half years. Previously, Officer Lennander spent nineteen and a half years with the Minneapolis Police Department, and four years active duty in the United States Army with the military police. His current role is as a Fugitive Apprehension Specialist. (Tr. 7–9.)

The FAU arrived at the location on Cypress around 9:40 AM, and Officer Lennander observed Defendant and another man, both seated on motorcycles.[2] (*Id.* at 15.) The two men were positioned next to each other and parked on the side of Cypress Avenue facing north. (*Id.* at 15.) Officer Lennander noted that Defendant was wearing a backpack on his back, but he did not observe a second bag at that time. (*Id.* at 15–16.) The FAU then moved in to arrest Defendant. (*Id.* at 16.) Investigator Pankratz pulled Defendant off his motorcycle and down to the pavement. (*Id.*) As this happened, Defendant's backpack came loose and fell to the ground, revealing a separate duffel bag inserted through the shoulder straps of the backpack. (*Id.* at 17.) Defendant was handcuffed, arrested, and placed in Investigator Pankratz's vehicle. (*Id.* at 18, 40.)

With the scene secured, Officer Lennander retrieved the two bags that had fallen off of Defendant. (*Id.* at 18–19.) Officer Lennander testified that he picked up the two bags from the pavement together, and upon grabbing the duffel bag he immediately felt what he recognized as the pistol grip of a "long gun." (*Id.*) Officer Lennander promptly alerted Investigator Pankratz that he believed "[t]here's a long gun in this duffel bag," and asked him to contact the Bureau of Alcohol Tobacco and Firearms ("ATF") so it could take over investigation of the firearm.[3] (*Id.* at 22–23.) Officer Lennander placed the two bags on the hood of his truck. (*Id.* at 19.)

---

[2]   Also present were FUA Investigators Pankratz, Nutter, Meagher, and Phenow. (Tr. 13.)

[3]   Officer Lennander also contacted the St. Paul Police Department to notify them that his team had recovered a firearm. (Tr. 23.) The FAU contacted these agencies

(Footnote Continued on Next Page)

Investigator Pankratz contacted the ATF at approximately 10:00 AM, and ATF agents arrived at the scene within fifteen minutes of his call. (*Id.* at 24.) Officer Lennander then moved the two bags to the tailgate of his truck and searched them with ATF agents present. (*Id.* at 25.) Defendant was still at the scene—in Investigator Pankratz's vehicle—at this time. (*Id.* at 27.) Officer Lennander found a loaded and chambered Winchester model 1300 Defender shotgun with a pistol grip in the duffel bag. (*Id.* at 26–27; Gov't Ex. 5.) In the backpack, he found one loose 12-gauge shotgun round, and a canteen-style pouch holding twenty-eight additional 12-gauge shotgun rounds. (*Id.* at 27; Gov't Ex. 6.) An inventory sheet completed by one of the ATF agents at the scene states that he took custody of the items at 10:53 AM. (*Id.* at 28; Gov't Ex. 7.)

## ANALYSIS

Defendant moves to suppress evidence obtained from the two bags seized from his person and searched on July 17, 2019, arguing that because the officers on the scene removed the bags from the area of arrest and allowed between thirty-five and seventy minutes to pass before the search was conducted, the search cannot be justified as a search incident to Defendant's arrest. (Doc. No. 43, Def.'s Post-Hr'g Mem. 3.) Defendant further argues that no other exception to the warrant requirement applies. (*Id.*) The Government opposes Defendant's motion.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

---

because its focus is on fugitive apprehension and thus it hands off firearms investigations to other agencies. (*Id*. at 24.)

Const. amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). "The government bears the burden of establishing that an exception to the warrant requirement applies." *United States v. Williams*, 616 F.3d 760, 765 (8th Cir. 2010).

The plain-view exception to the warrant requirement permits "law enforcement officers to seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent." *United States v. Reed*, 921 F.3d 751, 755 (8th Cir. 2019) (quoting *United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001)). The Supreme Court long ago extended the plain-view exception to other analogous situations, including those where an officer discovers contraband via her sense of touch:

> We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment – or at least no search independent of the initial intrusion that gave the officers their vantage point . . . . The same can be said of tactile discoveries of contraband . . . . The seizure of an item whose identity is already known occasions no further invasion of privacy.

*Minnesota v. Dickerson*, 508 U.S. 366, 375–77 (1993); *see also United States v. Works*, 338 Fed. Appx. 295, 299–300 (4th Cir. 2009) (holding that search of a plastic bag fell

within plain-feel exception because officer could tell the substance inside was cocaine); *United States v. Williams*, 822 F.2d 1174, 1183 (D.C. Cir. 1987) (holding that a search of a bag thrown away by defendant during a traffic stop was justified by "plain touch" exception when the officer handling the bag felt what he believed to be heroin); *United States v. Ocampo*, 650 F.2d 421, 429 (2d Cir. 1981) (holding that where the contents of a paper bag can be determined to be wrapped currency merely by feeling the bag, a plain-feel exception applies).

Another well-recognized exception to the warrant requirement is the inventory search. "The policies behind the warrant requirement are not implicated in an inventory search . . . nor is the related concept of probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* at 372. Such searches may include bags or containers in an arrested person's possession. *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983); *see also United States v. Chappell*, No. CRIM09-139 JNE/JJK, 2010 WL 1131474, at *12–14 (D. Minn. Jan. 12, 2010), *report and recommendation adopted*, 2010 WL 1131473 (D. Minn. Mar. 22, 2010) (holding that inventory search of arrestee's wallet was proper). "Inventory searches must be reasonable and 'be conducted pursuant to standard police procedures.'" *United States v. Thomas*, 992 F.2d 201, 204 (8th Cir. 1993) (quoting *United States v. Davis*, 882 F.2d 1334, 1339 (8th Cir. 1989)).

Both Defendant and the Government dedicate much of their post-hearing briefs to contesting whether the July 17, 2019 search was a search incident to arrest. This Court,

however, declines to address that question because the search of Defendant's two bags was constitutional under both the plain-feel and inventory-search exceptions to the warrant requirement.

### A. The Plain-Feel Exception Applies to the Search of the Duffel Bag

Here, it is clear from Officer Lennander's testimony that upon retrieving the bags from the ground, he immediately recognized the object in the duffel bag as a "long gun" with a pistol grip. From his extensive experience in law enforcement, Officer Lennander is well acquainted with firearms and pistol grips. (Tr. 22.) He was assigned a shotgun with a pistol grip for approximately ten years during his time with the Minneapolis Police Department. (*Id.* at 9, 22.) Officer Lennander testified that he carried such a firearm "out to [his] squad and back into the precinct every day." (*Id.* at 22.) Officer Lennander also testified that his experience with firearms stretches back to when he started hunting at the age of thirteen. (*Id.*) Officer Lennander further testified that upon grabbing the duffel bag, he immediately informed Investigator Pankratz that there was a long gun in it and instructed him to contact the ATF. (*Id.* at 23.)

Defendant does not contest Officer Lennander's testimony. Instead, Defendant focuses his argument on the law concerning the plain-feel exception to the warrant requirement. (*See* Def.'s Mem. 8.) Defendant maintains that the "plain-feel" exception articulated in *Minnesota v. Dickerson* is narrow and applies solely to searches of persons, not their belongings. (*Id.*) As explained above, however, the Supreme Court's rationale for creating the plain-feel exception was that "[t]he seizure of an item whose identity is already known occasions no further invasion of privacy." *Dickerson*, 508 U.S. at 377.

While the facts in *Dickerson* concerned a pat-down of a suspect, nothing in the Court's language suggests its ruling was intended to apply solely to searches of persons. Instead, the Court reasoned that "the suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch." *Id.*

Here, Officer Lennander knew immediately that the object in the duffel bag he had picked up was a long gun with a pistol grip. (Tr. 22.) Accordingly, this Court concludes that the subsequent search of the duffel bag and that weapon's seizure "occasion[ed] no further invasion of [Defendant's] privacy," and therefore properly falls within the plain-feel exception to the warrant requirement.

### B. An Inventory Search of the Bags was Justified

Defendant argues that because Officer Lennander described the search of the bags as a "search incident to arrest" in his testimony and failed to identify a specific policy authorizing the search, the inventory-search exception does not apply. (Def.'s Mem. 10.) This is incorrect. While an inventory search must be reasonable and conducted pursuant to standard procedures, no requirement exists that a law-enforcement officer be able to identify a specific department policy authorizing the search. *See Lafayette*, 462 U.S. at 642 (holding a search justified where officer testified that he inventoried a bag's contents because it was standard procedure to inventory everything in an arrestee's possession).

The circumstances here suggest that whatever label he assigned it, Officer Lennander plainly regarded the search of Defendant's two bags as an inventory search. After referring to the search as a "search incident to arrest" on cross-examination, Officer Lennander continued, "[a]nd if we're going to safeguard [Defendant's] property and

move it, I'm going to know what's in that bag before I move it, before I transfer it to our property room or to another person." (Tr. 40.) And earlier, on direct examination, Officer Lennander testified that when arresting someone, "[w]e usually recover the property and we safeguard it, and we'll have to search it because it's with them. And we're going to either put it in our property room or get it to their agent or a family member." (*Id.* at 25.) Officer Lennander testified that this is "standard police procedure." (*Id.*) Officer Lennander's actions bear this out – he did not immediately search Defendant's bags, but instead waited for ATF agents to arrive. Only then did Officer Lennander search the bags while an ATF agent completed an inventory sheet. (Tr. 19, 24–25, 28.)

For these reasons, this Court concludes that Officer Lennander was justified in conducting an inventory search of both Defendant's duffel bag and backpack.

### C. Conclusion

The totality of the circumstances demonstrate that the search of Defendant's duffel bag was justified under both the plain-feel and inventory-search exceptions to the warrant requirement, and the search of Defendant's backpack was justified under the inventory-search exception. Therefore, this Court recommends that his Motion to Suppress be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 21) be **DENIED**.

Date: January 13, 2020

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **January 27, 2020**. A party may respond to those objections by **February 10, 2020**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.