# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Shannon Michael White,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 19-236 ADM/BRT

---

Thomas Calhoun-Lopez, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Douglas L. Micko, Assistant Federal Defender, Office of the Federal Defender, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Shannon Michael White's ("White") Objection [Docket No. 48] to Magistrate Judge Becky R. Thorson's January 13, 2020 Report and Recommendation ("R&R") [Docket No. 46]. In the R&R, Judge Thorson recommends denying White's Motion to Suppress Evidence as a Result of Search and Seizure [Docket No. 21]. Based on a de novo review of the record, White's Objection is overruled, the R&R is adopted, and White's Motion is denied.

## II. BACKGROUND

The full background is set forth in the R&R and is incorporated by reference. Briefly, on July 17, 2019, the Minnesota Department of Corrections ("DOC") Fugitive Apprehension Unit ("FAU") executed an arrest warrant for White's violation of the terms of his supervised release. During the arrest, a backpack and a duffel bag fell from White onto the pavement near his motorcycle. Mot. to Suppress Hearing Tr. ("Mot. Tr.") [Docket No. 41] at 17. FAU Officer

Troy Lee Lennander ("Officer Lennander") testified, "there was a backpack and then through the shoulder straps was a duffel bag." Id. After White was handcuffed, Officer Lennander returned to where the backpack and duffel bag were on the pavement and picked up the two bags with one hand. Id. at 20. Officer Lennander testified that where he grabbed the duffel bag, he "immediately" felt and recognized that the duffel bag contained "a long gun with a pistol grip." Id. at 20, 21-22, 30, 38-39, 45.

Officer Lennander related standard police procedure after arresting a fugitive includes "safeguarding" the arrestee's property by conducting a property inventory and then either putting it in the police property room or identifying an agent or a family member to take possession of the property. Mot. Tr. at 25. Officer Lennander testified that the police do not transfer the bag of an arrested fugitive to the property room or to another person without knowing the contents of the bag. Id. at 40.

Judge Thorson found the seizure of the long gun with a pistol grip to be a constitutionally appropriate search based on the plain-feel exception to the warrant requirement. Alternatively, Judge Thorson found that the inventory search of the bags was justified under the circumstances.

White objects to Judge Thorson's recommendation, arguing the plain-feel doctrine is "limited to searches of a person, not their effects." Obj. at 1. White is concerned that Judge Thorson's recommendation gives police license to feel for contraband in violation of Fourth Amendment protections. White also objects to Judge Thorson's inventory search analysis and finding of inevitable discovery, claiming police did not testify to a clear policy of conducting inventory searches on the scene and claiming that a readily identifiable agent was on hand to take possession of the backpack and duffel bag without the need of a search. Id. at 1-2.

2

## III. DISCUSSION

### A. Standard of Review

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

### B. Plain-View and Plain-Feel Doctrine

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Incriminating evidence found in "plain view" does not constitute a search under the Fourth Amendment because it does not interfere with a legitimate privacy interest. Texas v. Brown, 460 U.S. 730, 738 (1983) ("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity"). "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton v. California, 496 U.S. 128, 133, 136 (1990). "[N]ot only must the item be in plain view, its incriminating character must

3

also be immediately apparent." Id. (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466-67 (1971)).

The Supreme Court has recognized the "plain-view" doctrine "where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." Id. at 135 (citing Harris v. United States, 390 U.S. 234 (1968)). The Supreme Court has also recognized situations in which an officer's "plain feel" of contraband, the "tactile discoveries of contraband," is not an invasion of privacy, reasoning that "the seizure of an item whose identity is already known occasions no further invasion of privacy." Minnesota v. Dickerson, 508 U.S. 366, 375-77 (1993).

**C. White's Objections to R&R's Application of Plain-Feel Doctrine Are Overruled**

White claims the R&R impermissibly expands the "plain-feel" doctrine. Obj. at 10. White argues Dickerson limits the "plain-feel" doctrine to Terry searches. See Dickerson, 508 U.S. at 368, 373 (finding "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon,'" (quoting Terry v. Ohio, 392 U.S. 1, 20)).

White's argument is unavailing. White is correct that courts should be "sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." Obj. at 10 (citing Dickerson, 508 U.S. at 378). But, this is not such a case. In considering Dickerson, the courts had already decided that the police were justified in stopping and pat-searching an individual who had aroused police suspicion of illegal drug activity. Dickerson, 508 U.S. at 368-

4

69. The question for the Supreme Court instead was whether the Fourth Amendment permitted the "seizure of contraband detected through a police officer's sense of touch during a protective patdown search." Id. at 368. Dickerson holds that during a constitutional search, officers need not ignore contraband discovered through their sense of touch, the "plain-feel" doctrine. Dickerson states, "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Id. at 375-76.

  Applying plain-view doctrine, the Court first inquires whether the police violated the Fourth Amendment in arriving at the place from which the evidence, here the long gun with a pistol grip, was plainly viewed. In this case, the officers were executing an arrest warrant; thus, their presence in securing White's person was appropriate. Like in Harris, there is no indication Officer Lennander was searching for evidence when White's possessions were removed from the pavement. See Harris, 390 U.S. at 236 ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.) Picking up the backpack and duffel bag from the public area, whether to safeguard White's property or to move White's property off the public street, was not a violation of an expectation of privacy. When Officer Lennander, by transporting the items, came in contact with the shape and size of a long gun with pistol grip and immediately recognized it as such, the contraband fell under the plain-feel doctrine. Similar to the Dickerson officer who felt the shape and size of drugs through a pocket he was legally allowed to pat down,

5

Officer Lennander was justified in seizing the gun based on his immediate recognition of the size and shape of the pistol grip inside a duffel bag he was legally allowed to pick up to move from the public pavement. See Dickerson, 508 U.S. at 374-75, 376 (the warrantless seizure was justified "by the same practical considerations that inhere in the plain-view context.").

The finding here is narrow and sensitive to the concern described in much of Fourth Amendment law cautioning against allowing a general exception to the warrant requirement. See, e.g., Harris, 390 U.S. at 236 ("Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.") Where an officer picks up a bag from a public area after an arrest, if the officer inadvertently is immediately able to recognize the feel of contraband connected to a suspect in custody, there is no invasion of privacy in seizing the contraband.

**D. Inventory Search**

The Court agrees with Judge Thorson's alternative basis for the admission of the gun as evidence. R&R at 8-9. The Government met its burden of establishing an inventory search would have inevitably discovered the gun. As Judge Thorson pointed out, Officer Lennander testified that after arresting a fugitive, standard police procedure includes "safeguarding" the arrestee's property by conducting a property inventory and then either putting it in the police property room or identifying an agent or a family member to take possession of the property. Mot. Tr. at 25. Officer Lennander testified that the police do not transfer a bag, left unclaimed at the scene of an arrest, to the property room or to another person without knowing what is in the

bag.[1] Id. at 40.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. White's Objection to Report and Recommendation [Docket No. 48] is **OVERRULED**;

2. The Report and Recommendation [Docket No. 46] is **ADOPTED**;

3. White's Motion to Suppress Evidence as a Result of Search and Seizure [Docket No. 21] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated: March 3, 2020

---

[1] When the police arrived to arrest him, White was sitting on his motorcycle, which was parked next to a second motorcycle with a rider. White argues the police should have identified the second motorcyclist as his agent and should have directed him to retrieve White's backpack and duffel bag. Officer Lennander testified that the police do not allow someone to take possession of an arrestee's property without identifying both who the person is and what property is being turned over.